ROBERT Q. PINCKNEY, PLAINTIFF IN ERROR, *vs.* WILLIAM A. DUNN, DEFENDANT IN ERROR.

Where a factor receives his principal's money and retains it, without giving notice to the principal, until the currency, in which it was received, becomes worthless, he cannot relieve himself from liability for the loss by showing, merely, that he was not in default in an unreasonable detention of the money: he must, also, show that it remained in his hands as the property of the principal. If he mixes it with his own money, or uses it in his business, he is liable therefor.

Where a factor received, in 1862, Confederate currency for his principal, and deposited it in bank, to his own credit, giving no notice to the principal that he had received it until some time after Confederate currency had ceased to be of any value: *Held,* That proof that he was not in default in his failure to give notice, and that he always had a balance in bank to his credit during the war, was not sufficient to relieve him from liability to his principal for the money.

Writ of error to the Circuit Court for Charleston County. His Honor the Circuit Judge, before whom the action was tried, made a statement of the case for this Court, which is as follows:

"This was an action of assumpsit. The declaration contained several counts, one or more charging the defendant, as factor, for not accounting for cotton received by him from the plaintiff for sale. There was a count upon *an account stated* and the money counts.

"The only evidence offered by the plaintiff was contained in letters of the defendant and accounts furnished by him. By the ac-

counts it appeared that there was to the credit of the plaintiff, on the defendant's books, in January, 1861, a balance of sixty-nine dollars and eighteen cents.

" The accounts furnished by the defendant, in 1868, showed that the cotton, shipped by the defendant, through G. C. Bauermeister, then a merchant in Charleston of good standing, had been sold in Liverpool by F. C. Huth & Co., for an amount, in sterling currency, which the defendant estimated as equal, in Confederate currency, to $1,671.

"The defendant had advanced to the plaintiff on his cotton, at time of shipment, $1,212.60, making the difference between the amount received by the plaintiff, and the price for which the cotton sold, $458.40, in Confederate currency.

" The defendant Pinckney was absent during the war, but, in February, 1862, Mr. Clacius, agent of G. C. Bauermeister, paid over to the agent of Pinckney, in Charleston, a sum of Confederate currency, said to be the balance of sundry shipments of cotton, by Pinckney, through Bauermeister, in which Dunn's balance was included but not designated. No account of sales, showing the particulars of the sales of the several shipments, or the respective balances, accompanied the payment by Mr. Clacius.

" After the war, Pinckney endeavored to get accounts of the cotton from Bauermeister, but failed to get account sales, from which a statement of the different shipments could be made, until February, 1868.

"The jury were charged that the defendant was liable to the plaintiff in this action, not only for the balance of $69.18 admitted to be due in 1861, but also for the difference between the amount for which the plaintiff's cotton was sold and the amount advanced by the defendant to the plaintiff; that the defendant's absence from the city, and the interruptions of the war, was no excuse for his not accounting to the plaintiff for the proceeds of sales of the plaintiff's cotton, received by him ; and that he was responsible for the value, in good money, of the amount so received by him, and not accounted for, with interest. The jury found a verdict for $527.58, the aggregate of the two amounts above stated, with interest from 12th February, 1862.

"The defendant moved for a new trial, upon the same grounds taken at the trial, and also on the ground that the jury had not made any allowance for the difference in value between Confederate currency and lawful money. I refused to grant a new trial on the

first ground, but upon the second I made an order that a new trial be granted, unless the plaintiff remit the verdict by deducting from the principal sum therein stated the sum of $88.73, so that the verdict may be for $438.85, with interest from 12th February, 1862.

"The plaintiff elected to so remit, and enters up judgment in accordance with the order.

" In pursuance of exception taken at the trial, the defendant has called on me for a statement of the case, with a view to an appeal, on the grounds hereto annexed. It was in evidence that regular communication from Europe was cut off from Charleston, by blockade, between 1862 and 1865; that Pinckney did not receive Bauermeister's accounts of the sales of plaintiff's cotton and the other shipments until 1868, at which time he made out, from data not previously in his possession, the account which he rendered to plaintiff's solicitor, stating balance in Confederate currency of $458.40, as of 12th February, 1862.

"It was also proven that the Confederate money received in 1862 had been deposited by Pinckney in bank, and that he had always a balance to his credit in bank during the war, until bank deposits of Confederate money became valueless."

The grounds taken for the plaintiff in error were as follows:

That the factor is not liable to account until he is in a position to render an account.

That the account sales, which furnished the data for the statement of Dunn's balance, not being received until 1868, it was impossible for him, in February, 1862, to have ascertained Dunn's balance; and before it became possible for him to state Dunn's account, and notify him of a balance of proceeds to his credit, the Confederate money received by him had become valueless.

*Simonton & Barker*, for appellant:

1. The factor is not liable for accounting until he is in a position to account.

The plaintiff's action is not for *negligence*, on the part of defendant, in the conduct of his agency, but assumpsit on the implied contract of a factor to pay over proceeds after demand. To render defendant liable for the value of the Confederate currency received by him in 1862, some default must be proved against him while the currency was worth anything.

There is a distinction recognized in *Clark* vs. *Moody, et al.*, 17

Mass., 145–153, as it is, also, in *Cooley* vs. *Betts*, 24 Wend., 203, 205, 206, between the duty of a factor to render an account, and his duty to pay over money in his hands. It is his duty to render accounts at *reasonable* time, and, *in case of neglect or refusal* to do so, he is, probably, liable to an action, without a demand, as soon as he is in default for not accounting; but where he has rendered accounts duly, and is in no default of any kind, he is not liable to an action for money received by him until a demand has been made upon him, or instructions given to remit.—*Ferris* vs. *Paris*, 10 Johns., 285.

And this is chiefly because the money is received by him to await the instructions of his principal, and it is not his duty to remit without instructions, and partly, it is said, because when the money is to be paid, he is not to seek the principal and pay him wherever he may be, but it is due, and payable at the factor's residence.—*Hall & Chase* vs. *Peck & Co.*, 10 Verm., 474; 1 Am. Lead'g Cases, 519.

There is no evidence that plaintiff sought his money during the war, or that defendant refused to account with him.

It is in evidence that the defendant could not state plaintiff's account until he received the accounts of Bauermeister, and that he did not receive these until 1868. He is not charged with want of diligence, or proved in default of this part of his agency. During the war he could not communicate, lawfully, in consequence of the blockade. After the war he is not charged with neglect.

If, while Confederate currency had a value, defendant could not render plaintiff an account, the loss, in value of the proceeds received, should not be charged to him, but be attributed to the war.

2. The plaintiff cannot recover, upon "account stated," the value of Confederate money in 1862, because the account was stated in 1868, *nunc pro tunc*, and showed only what balance would have been placed to plaintiff's credit, had the account of Bauermeister been received at that time, or afterwards, and before Confederate currency became worthless.

"The account stated," says Chitty, "alleges that the defendant, on a named day, month and year, accounted with the plaintiff of and concerning divers sums of money before then due from the defendant to the plaintiff, and then in arrear and unpaid, and that, upon such accounting, the defendant was then found to be in arrear to the plaintiff in the named sum, and that, being so found in arrear and indebted, the defendant, in consideration thereof, then

promised the plaintiff to pay him the same on request."—1 Chit. Pl., 342.

If any promise to pay can be implied from the account stated by defendant in 1868, it would be to pay so much Confederate currency, which is not what the plaintiff seeks.

3. Plaintiff cannot recover under the counts for money had and received. " It must, in general, appear that the defendant has received money, and not merely money's worth, as stock or goods."— 1 Chit. Pl., 351 ; *Morrison & Berkey*, 7 S. & R., 246. "Nor for the value of foreign securities, unless it appear that the defendant converted the same into money."—*McLachlan & Evans*, 1 Y. & J., 380.

*Lesesne* and *Miles*, contra :

I. The action *is* against factor for *neglect* and *default* in doing his duty as factor. The neglect and default alleged in the declaration is in the failure to account and the failure to pay over.

The precedent and the authorities for it will be found 2 Chit. Pl., 343.

The evidence (furnished entirely by the defendant's letters) proves the sale, and the receipt of the proceeds of sale by the factor, as well as a balance due to the plaintiff on an old account, but no notice to plaintiff of the receipt of the money, and no payment.

The letter of defendant, of 21st July, 1861, in evidence, proves that defendant understood his duty as factor. He says : " Relative to the cotton shipped I have not yet heard from it ; indeed, it is scarcely time. *As soon as I do I will inform you."*

" The term '*accounting*' has a large signification ; any non-payment is a non-accounting."—2 Chit. Pl., 342, note g.

·" When an agent omits to render his account of sales when reasonably required after the sales are made, he will be presumed to have received the money, and will be accountable therefor ; and, in all cases of unreasonable delay, he is generally charged with interest, whether he has made interest or not."—Story on Ag., § 204.

" The responsibility of factors, or agents, for the price of goods sold by them, does not attach till it is received, unless where they have improperly sold upon credit, or where the delay of payment has been occasioned by their neglect. * * * * * If the agent admit that he has received the money, as by taking credit in account with the debtor, he is thenceforth precluded from saying, as against the claim of his principal, that the money has not been received."—Paley Pr. and Ag., Sec. 8, (1.)

"The actual receipt of money, on account of their principal, makes them, in all cases, accountable."—Ib., Sec. 8, (3.)

"The averment in the declaration of a general request ('*licet sœpius requisit*') is sufficient in assumpsit based upon a mere duty, (Com. Dig. Pleader, C., 70.) And is sustained by proof of any demand before action brought, or before trial. A special demand need not be laid where the consideration for the defendant's promise has been executed. A special demand need not be alleged or proven in an action of account.—*Ib.*

No demand is necessary where the agent unreasonably neglects to account, or is otherwise in default.—*Tillottson* vs. *McCrillis*, 11 Vt., 477. Cited Parson's Mercantile Law, p. 157, n. 6. The cases cited by appellant, in which the factor has been held not liable, are where he has duly accounted, but has received no instructions to remit.

In this case the defendant, as factor, having received the money for plaintiff's cotton, was bound to remit without special instructions, because the correspondence shows this to have been the course of dealing between them, and the plaintiff could not give further instructions until the defendant informed him of the receipt of the money, as he had promised to do.

But the evidence in this case (furnished by defendant's letters,) is sufficient to prove special instructions, because "it is not necessary, in all cases, that the consignor should give an order in the form of a command, in order to make it the duty of the factor to obey it. The expression of a wish by the consignor may fairly be presumed to be an order; and any answer by the factor, to the effect that he had not noted the wish, would be construed to be an assent thereto."—*Brown* vs. *McGran*, 13 Peters, 494. Cited in Story on Contracts, § 359.

The argument of appellant admits that it is the "duty of the factor to render accounts at reasonable time, and in case of neglect or refusal to do so, he is probably liable to an action without demand so soon as he is in default for not accounting." But he denies that defendant is in default for not accounting, because "the factor is not liable to account until he is in position to account;" and that the defendant could not state plaintiff's account until he received the accounts of Bauermeister, and that he did not receive these until 1868.

The answer to this is:

1. That the defendant's default in "not accounting" was com-

plete when he received the sales money for plaintiff's cotton in 1862 without notifying the plaintiff of the fact, as he was bound, and had agreed to do, and allowing him the opportunity of receiving payment upon such statement as might have been agreed upon between them, even without the account sales. If the money thus received by defendant for the plaintiff was subsequently lost, the loss must be borne by the party in default, the defendant.

2. If the defendant was not "in a position to render an account" in 1862, this was a default caused by the negligence or inadvertence of the defendant, or his agents, for whom he is liable.

In the same manner in which the defendant received the proceeds of sale of the plaintiff's cotton, he might have received the account sales; and if such account sales were necessary to enable defendant "to account," (which is not admitted,) and the defendant could have obtained them by reasonable skill and diligence,) the failure to procure them cannot excuse him from the legal consequences of his default in not accounting and paying over.

The sale was made in Liverpool in 1862, and the proceeds of sale paid to defendant. The defendant furnished the account sales to the plaintiff in 1868.

"Factors are generally held liable only for a reasonable exercise of skill, and for ordinary diligence in their vocation. * * * But good faith alone is not sufficient. There must be reasonable skill, and a fixed obedience to orders; and if there is any loss occasioned by negligence, or mistake, or inadvertence, which might fairly have been guarded against by ordinary diligence, the factor is responsible."—Story on Bail, § 455; 1 Parson's on Con., 96. "A factor is responsible not only for himself, but for those he may employ under him."—Smith's Mer. Law, 154.

If the loss in this case is attributed to the loss of value of the Confederate money received by the defendant, the defendant is liable to the plaintiff, because it would not have been lost to the plaintiff but for the defendant's previous neglect in not notifying the plaintiff of its receipt, and allowing him the opportunity of receiving it while it had value.

"The mere absence of fraud or bad motive is not sufficient to justify an act detrimental to the employer's interest, and although the loss be not an immediate consequence of any fault of the agent, yet if it be such as would not have occurred but for his previous neglect, he is answerable for the consequences."—Paley on Agency, 9; Parson's Mercantile Law, 163, and cases cited.

The defendant having received the plaintiff's money, and, without notifying him of its receipt, having deposited it to his own account, it was at his own risk, and he is not excused from liability because the money so deposited was lost.

"If an agent place his principal's money to his own account with his general banker, without any mark by which it may be specified as belonging to the trust, and the banker fail, the agent will not be excused. And a loss occasioned by an unauthorized disposal of the principal's money is chargeable to the agent.—Paley on Agency, 47.

II. The verdict of the jury may be referred to any count of the declaration, and "the count, on an account stated, which is always inserted in a declaration in assumpsit for the recovery of a money demand," (1 Chit. Pl., 343,) is supported by the evidence, and sustains the verdict "for the value in good money of the amount received by the defendant, and not accounted for, with interest," in accordance with the instructions of the Judge.

III. If money has been received by a factor, it may be recovered under the common money count for money had and received.—2 Chit. Pl., 343, note 1.

"Where money has been received by the defendant, which, *ex œquo et bono*, ought to be paid the plaintiff, it may be recovered by the plaintiff under the count for money had and received to his use.—1 Chit. Pl., 341.

In this case the defendant did receive money, admits that he received it, without giving notice to the plaintiff, and that he has never paid it to the plaintiff, but denies his liability to pay it now, because the money so received and retained by him became valueless in his hands.

The plaintiff is entitled to recover, in this action, not only the balance admitted by defendant to be due in 1861, but "the value in good money of the amount received by the defendant, and not accounted for, with interest," and the verdict and judgment is in accordance with this view.

*Simonton & Barker*, in reply, cited Paley on Ag., § 8, p. 28; Story on Ag., §§ 201, 202; *Tillotson* vs. *Enlis*, 11 Verm., 477.

March 28, 1871. The opinion of the Court was delivered by

WILLARD, A. J. The declaration *in assumpsit* charged the defendant, as factor, with not accounting for cotton received by him from the plaintiff for sale, and contained a count upon account stated and the money counts. Plaintiff consigned to the defendant,

21A

a factor in the city of Charleston, cotton for sale. The cotton was shipped by defendant, through a mercantile house in Charleston, to Liverpool, and was there sold. In February, 1862, the defendant received in Charleston an amount in Confederate money, including the proceeds of the cotton sold in Liverpool. The amount due the plaintiff could not then be ascertained for the want of an account of the sales. In consequence of his inability to get such account sales, defendant did not render his account until 1868. The blockade of the port of Charleston, from 1862 to 1865, is assigned as, in part, the reason of the delay. The account showed a balance in plaintiff's favor. The jury, by the direction of the Circuit Judge, rendered a verdict for plaintiff for such balance, which was subsequently reduced, for the purpose of correcting the conversion of Confederate into United States values. This verdict, as amended, must be regarded as in conformity with the account rendered by the defendant. The real question in controversy arises out of the fact that, subsequent to the receipt of the proceeds of sale by the defendant, and prior to the rendition of his account, the Confederate money became valueless. The defendant claims, substantially, that the proceeds of sale, in the form of Confederate money, remained in his hands at the risk of the plaintiff. On the other hand, it is claimed that the factor was in default for not accounting at a day that would have enabled the plaintiff to realize value from such currency.

Had the verdict depended upon the question of a due accounting on the part of the defendant, the facts should have been submitted to the jury; while, in point of fact, the verdict was rendered in obedience to the instructions of the Judge.

It appears by the case, however, that the defendant failed to establish that he had held these proceeds apart from his other funds as the property of the plaintiff, so as to cast the risk of their loss upon him. The case states that it was proven that the Confederate money received in 1862 had been deposited by defendant in bank, and that he had always a balance to his credit in bank during the war, until bank deposits of Confederate money became valueless. The inference is warranted that he used the proceeds of sale in his business, and, having taken the advantage of its use, would naturally be chargeable with the risk attending such use.

The account rendered in 1868 forms the basis of plaintiff's demand in this action. It throws the burden of a defence upon the defendant, who is bound to show that the proceeds of sale were lost

under circumstances throwing the risk of loss exclusively upon the plaintiff. To do this he must show that the proceeds remained in his hands as the property of his principal, and that he was not in default in an unreasonable detention of such proceeds, whereby the loss was occasioned. If he fails on either point to present a state of facts that would authorize a jury to find a verdict in his favor, the Court was justified in directing a verdict for the plaintiff.

It is only necessary to consider whether the Confederate money received in 1862 was wholly or in part the property of the plaintiff, and retained that character down to the time of the loss.

Goods consigned to a factor for sale, or their proceeds, so long as they are capable of being identified, remain, in his hands, the property of the consignor, subject to any lien of the factor for advances, commissions and expenses. When the proceeds consist of notes, or money in bags, it is to be regarded as the property of the principal, (*City Council* vs. *Duncan*, 3 Brev., 386,) and this character is not lost, though they come into the hands of the personal representatives of the factor after his decease, (*Veil* vs. *Mitchell*, 4 Wash. C. C., 105,) or of his assignees for the benefit of creditors.— *Thompson* vs. *Perkins*, 3 Mason C. C., 232.

The correlative proposition that extends the equity of this rule to the protection of the factor is, that the factor, holding and treating the property consigned, or its proceeds, in whatever form they may be, as the property of his principal, apart from his own property and funds, is not chargeable with its loss, happening without his fault. Where a factor purchased, with the proceeds of sale, a good bill for remittance to his principal, and the bill was subsequently dishonored, he was held not to be liable, although he had a *del credere* commission.—*Muller* vs. *Bohlens*, 2 Wash. C. C., 378. His possession being in the nature of a trustee, his character as an agent, in dealing with the property, should appear in a clear light.—*City Council* vs. *Duncan*, 3 Brev., 386; *Veil* vs. *Mitchell*, 4 Wash. C. C., 105. If, on the other hand, the factor mixes the property with his own, or uses it indiscriminately with his own property or funds, or if he should speculate with or derive undue advantage from it, the principal may either seek satisfaction out of the whole estate with which his own has become undistinguishably commingled, (*Yates* vs. *Arden*, 4 Wash. C. C., 526,) or may, at his election, treat his factor as a debtor for the amount thus misused.—*Poulter* vs. *Cornwall*, 1 Salk., 9.

So it was held when a factor took, in payment for goods sold, a

promissory note payable to. himself, and, without instructions from his principal, put the note in judgment, but, before attempting to enforce the judgment, sued his principal, that he could not recover, for the reason that, having assumed to collect the note as his own property, he was bound to enforce his judgment.—*Hamilton* vs. *Cunningham*, 2 Brock., 350. The liability of the factor, in such cases, is in the nature of a breach of trust.— *Cooley* vs. *Betts*, 24 Wen., 203.

No objection. is made, in the present case, of a want of due demand before suit brought. Nor is any question made as to the right of the factor to accept the proceeds of sale in Confederate currency. The only question is, whether the defendant held the Confederate money, which he claims to represent the proceeds of sale, apart from his other property and funds, so as to throw the risk of its loss upon the plaintiff.

In the first place, the specific notes sought to be charged to plaintiff's risk were never set apart from the aggregate sum that came into defendant's hands. In the second place, the amount was placed in bank, as a general deposit, to the credit · of the defendant. The bills became the property of the bank, and the defendant received, in lieu thereof, a general bank credit, which he employed in his business.

The fact that he always had a balance in bank is of no importance. At most, it tends to show a foundation for a good credit as a merchant, strengthened by the possession of plaintiff's means. We hold that this was such a use of the property of the plaintiff as to place the risk of loss on the defendant. As he enjoyed whatever profit there was in the use of the money in his business, he should bear the risk attending such use.

It follows, therefore, that it is unimportant to the case to inquire whether the defendant unreasonably retained in his hands the proceeds of sale; and, therefore, if error was committed by the Judge in charging that the state of war and blockade furnished no excuse for delay in accounting, it was, at least, innoxious, so far, at least, as the rights of the parties in the present case are concerned. As there was no valid defence to the plaintiff's demand, the direction to the jury, to find a verdict for the plaintiff, was free from error.

The motion for a new trial must be denied.

*Moses*, C. J., and *Wright*, A. J., concurred.